# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY WHITE, | : | Civil No. 3:17-CV-1679 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| TAMMY FERGUSON, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is Anthony White's ("Petitioner" or "White") counseled amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed by the Court of Common Pleas of York County, Pennsylvania.  (Doc. 17.)  For the reasons that follow, White's counseled amended petition is denied because his sole ineffective assistance of trial counsel claim is procedurally defaulted after the Pennsylvania Superior Court deemed it waived for lack of development and White failed to establish any basis for habeas relief on this procedurally defaulted claim.  As reasonable jurists would not find the court's procedural ruling debatable or deserving of encouragement to proceed further, a certificate of appealability will not issue.

FACTUAL BACKGROUND & PROCEDURAL HISTORY

A.    Trial

The Pennsylvania Superior Court in its July 26, 2017 Memorandum

recounted the facts underlying White's conviction as follows:

> On December 10, 2011, a woman, Julie Ann Wolpert, walked to a corner store located at the intersection of College Street and Penn Street in York, Pennsylvania at approximately 7:30–8:00 p.m.  She observed people on the corner, who did not make her feel "comfortable." She called a friend, Will, who picked her up in his vehicle and dropped her off a half–block from her home, located at 315 South Penn Street. She also called her boyfriend, Roy Swaney, to come escort her home.  When she got out of the car, she realized a male individual had followed her. Although she stated she had poor eyesight, she described the person as a tall black guy, he had all black on, and his eyes were piercing.  She stated he also had two gold teeth and a black piece of material on his head.  She met up with Swaney at the rear of the residence, but the man continued to follow them, saying that he wanted them to stop and he wanted to talk to them. When Wolpert and Swaney got into the house, they closed the door.  Swaney went to call 9-1-1 while Wolpert grabbed her cats to remove them from harm's way.  The perpetrator then kicked in the door and aimed a silver automatic pistol at Wolpert's cat, but the gun jammed.  Another resident of the house, Christopher Armagost, came down the stairs, pushed the man out of the home, and shut the door.  From outside, the perpetrator fired multiple shots through the door and windows of the residence, killing Armagost.
>
> On December 12, 2011, Detectives Travis A. Sowers and Jeffrey Spence of the York City Police Department showed a photo line-up to Wolpert and Swaney separately. The line-up included a picture of [White] and seven other individuals.  Both witnesses used a piece of paper to cover

up the top portion of each person's head on the line-up because the suspect was wearing a back hoodie or skull cap at the time of the shooting. Both Wolpert and Swaney positively identified [White] as the shooter. They also positively identified him at trial.

During the investigation, the investigating officers removed a wooden piece of the door from the home, approximately nineteen inches by eleven inches, which contained a shoe impression on it. Sergeant Daryl Van Kirk analyzed the piece of wood in comparison with two Polo Ralph Lauren boots, size eight–and–a–half D, which belonged to [White] and were confiscated at the time of his arrest. After examining the evidence, Sergeant Van Kirk concluded that the questioned shoe impression from the door could have been made by the left Polo Ralph Lauren shoe … or another shoe with the same characteristics. The police also seized a set of gold front teeth from [White's] right front pants pocket. The investigation also revealed gunshot residue (GSR) on [White's] pajama pants, white t–shirt, and left hand; a magazine with bullets found in [White's] room that matched the manufacturer type and caliber of the casings found at the scene; and video evidence of [White] walking toward the scene at approximately 8:15 p.m., and away from it at 8:27 p.m.

[White] was arrested and charged with first-degree murder, second-degree murder, third-degree murder, and burglary. On April 19, 2012, [White] filed an *omnibus* pre-trial motion to suppress, claiming the photo lineup identification was unduly suggestive. A suppression hearing was held on May 29, 2012. The same day, the trial court denied the motion to suppress.

The case proceeded to trial, which was held from September 10, 2012 to September 13, 2012. The jury found [White] guilty of second-degree murder and burglary, and not guilty of first-degree murder and third-

> degree murder.  On October 22, 2012, the court imposed a
> term of life imprisonment on the murder conviction.

*Commonwealth v. White*, No. 1615 MDA 2016, 2017 WL 3169078, at *1–2 (Pa.

Super. Jul. 26, 2017) (internal citations, footnotes, and quotations omitted), Doc.1–

3, pp. 89–100 (quoting *Commonwealth v. White*, No. 1962 MDA 2012, 2013 WL

11248747, at *1–2 (Pa. Super. Dec. 2, 2013).

### B.   White's Direct Appeal

White filed a timely appeal to the Superior Court of Pennsylvania

challenging "the [trial] court's denial of his motion to suppress" and claiming

insufficient evidence was presented at trial to support the jury's guilty verdict.

(*Id.*; Doc. 1–2, p. 1.)[1]  The superior court affirmed the trial court's finding that

White's December 12, 2011 line–up picture "d[id] not stand out more than those of

the others" and that White had "not argue[d] that the procedure employed by the

detectives in administering the array was improper or inappropriate."  (*Id.*, p. 10).

The superior court also held "there was sufficient evidence to support the second–

degree murder conviction."  (*Id.*, p. 14).  White did not file a petition for allowance

of appeal to the Supreme Court of Pennsylvania.  (Doc. 1–3, p. 91.)

---

[1]  For ease of reference, the court utilizes the page numbers from the CM/ECF header.

## C.     White's Post–Conviction Collateral Appeal

During the pendency of White's direct appeal, he filed a *pro se* petition

pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541

– 9546.  (Doc. 1–3, p. 91.)  It was denied as premature.  (*Id.*)  White did not file an

appeal.

On December 8, 2014, White filed a counseled second petition which was

later amended on January 19, 2016.[2]  (Doc. 1–2, pp. 16–62.)  White raised the

following two claims in his counseled second amended PCRA petition:

> Claim One:  The Commonwealth's case hinged on Julia
> Wolpert's and Roy Swaney's out–of–court photographic
> identifications and their in–court identification–which
> were based on their out–of–court photographic
> identifications.  Detectives showed Ms. Wolpert and Mr.
> Swaney four 8–man photo arrays or 32 photographs of
> suspects on December 10, 2011, including Anthony
> White's photograph.  Ms. Wolpert and Mr. Swaney did not
> identify Mr. White as the gunman on December 10th.  Two
> days later, after detectives arrested Mr. White and
> photographed him during the booking process, detectives
> placed Mr. White's booking photograph into another 8–
> man photo array, which they then presented to Ms.
> Wolpert and Mr. Swaney on December 12, 2011.  Mr.
> White was the only suspect who Ms. Wolpert and M[r].
> Swaney viewed on December 10th and 12th, 2011.  This
> information as well as other facts proving the
> suggestiveness of the detectives' identification procedures
> was disclosed to trial court before trial, yet trial counsel
> never raised or argued these significant and highly
> suggestive facts in his suppression motion, at the

---

[2]  Attorney Craig M. Cooley, White's habeas counsel, also represented him during his post–
conviction proceedings.  (Doc. 1, p. 39, Doc. 17.)

suppression hearing, or at trial.  Trial counsel did not have a reasonable basis or strategic reason not to raise and argue these facts.  Trial counsel's decision, therefore, was objectively unreasonable and prejudiced Mr. White because [if] he had raised and argued these facts there is a reasonable probability the trial court would have suppressed Ms. Wolpert's and Mr. Swaney's out–of–court photographic identifications.  Had the trial court suppressed their out–of–court identifications, there is a reasonable probability it would have suppressed their in–court identifications as well because there was no independent basis for their identifications.  Had their out–of–court and in–court identifications been suppressed, there is a reasonable probability the outcome of Mr. White's trial would have been different.  U.S. Const. Amends. VI, VII, XIV; Pa. Const. art. I, §§ I, 9.

…

<u>Claim Two</u>:  Although trial counsel failed to highlight the fact Ms. Wolpert and Mr. Swaney failed to identify Mr. White on December 10, 2011, trial counsel did elicit and present evidence that both Ms. Wolpert and Mr. Swaney were not in a position to clearly observe and focus on the gunman.   Trial counsel, however, failed to request a *Kloiber*[3] instruction warning the jury it must view their identifications with caution.   Trial counsel had no[ ] strategic or rational basis not to request a *Kloiber* instruction, especially because the Commonwealth's case hinged significantly on their identification.   Trial counsel's objectively unreasonable decision prejudiced Mr. White because, based on the jury's request to review

---

[3]  *See Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 280 (Pa. 1954).  In *Kloiber*, the Pennsylvania Supreme Court recognized the need for a cautionary instruction in certain eyewitness cases "where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 283 (2010).  A *Kloiber* charge is not mandatory "[w]here an eyewitness has had 'protracted and unobstructed views' of the defendant and consistently identified the defendant 'throughout the investigation and at trial.'" *Id.* (quoting *Commonwealth v. Dennis*, 552 Pa. 331, 715 A.2d 404, 411 (1998)).

> Ms. Wolpert's trial testimony, there is a reasonable probability that had jurors been instructed to view Ms. Wolpert's and Mr. Swaney's identification testimony with caution, they would have found both unreliable and not deserving of sufficient weight to convict Mr. White beyond a reasonable doubt.

(Doc. 1–2, pp. 41, 59) (explanatory footnoted added).

The PCRA court held a hearing on June 6, 2016, at which hearing White's trial counsel, Attorney Neiderhiser, testified.  (*Id.*, pp. 64–90.)  Because White "denied it was him from the beginning," Attorney Neiderhiser's trial strategy was "[i]t was somebody else. It wasn't him.  He wasn't there."  (*Id.*, p. 72.)  On cross–examination, Attorney Neiderhiser testified he did not recall seeing the first lineup report from December 10, 2011, where the eyewitnesses failed to identify White as the gunman from a photo array.  He agreed that such information would be "absolutely" relevant and probative information to be argued at a suppression hearing and trial, as well as favorable to requesting a *Kloiber* instruction.  (*Id.*, pp. 76–79.)

On September 1, 2016, although the PCRA court found "it was unreasonable for trial counsel to not argue in [White's] suppression motion, at the suppression hearing, or at trial the fact that Ms. Wolpert and Mr. Swaney failed to identify [White] the first time they were shown a line–up containing [his] picture on December 10, 2011," it denied the petition on the basis that White failed to establish under *Strickland v. Washington*, 466 U.S. 668 (1984), that there was a

reasonable probability that, but for counsel's objectively deficient performance, the result of his trial would have been different.  "Trial counsel's ineffectiveness by failing to establish in Defendant's suppression motion, at the suppression hearing, and at trial that Ms. Wolpert and Mr. Swaney failed to identify Defendant the first time they were shown a line–up containing Defendant's picture, was not of such magnitude to have a reasonable adverse effect on the outcome of the proceedings– specifically in light of other evidence presented … it is important to note that the photograph of Defendant used in the photo line–up on December 12, 2011, was not the same photograph presented to Ms. Wolpert and Mrs. Swaney on December 10, 2011."  (Doc. 1–3, p. 1.)  The PCRA court cited the following:

> (1) evidence demonstrating boots owned by the Defendant, that were confiscated at the time of his arrest, could have matched the shoeprint on the door, which had been kicked in when the gunman had entered the residence, (2) evidence that a set of front gold teeth were seized from the Defendant's right front pants pocket at the time of his arrest, (3) testimony from a gunshot residue ("GSR") expert that GSR was found on Defendant's pajama pants, white t–shirt, and left hand, (4) testimony that a magazine containing six bullets was found in Defendant's bedroom at the time of his arrest, which matched the manufacturer and caliber of the ammunition casings found at the crime scene, and (5) video evidence showing Defendant walking by Young's store, one block from the location of the murder, at 8:15 p.m., heading south in the direction of the murder–then, subsequently, at 8:27 p.m., the video evidence showed Defendant walking

> north, away from the location of the murder, presumably
> back to his residence.

(*Id*., p. 2.)

The PCRA court added that trial counsel was not ineffective for failing to

challenge the identification procedures utilized by the detectives "in creating and

presenting" the photo arrays or that trial counsel should have argued "mugshot

exposure, non–blind administration, and simultaneous presentation" in addition to

other facts argued in suppression of the witnesses' identifications.  (*Id*., pp. 3–5.)

White's ineffectiveness claim concerning trial counsel's failure to request a

*Kloiber* instruction was also denied based on the fact that the eye witnesses'

"identification of [White] as the shooter  [ ] never wavered."  (*Id.*, p. 7.)  "[E]ven if

[White] had been entitled to a *Kloiber* instruction, his claim would fail because this

Court finds there is no reasonable probability that such an instruction would have

changed the outcome of the trial."  (*Id.*)

White filed a timely appeal to the Pennsylvania Superior Court.  White

presented the following issues in his counseled PCRA appellate brief:

> I.  The PCRA court erred because the record does not
> support its prejudice analysis.  Stated differently, in the
> absence of Julie Wolpert's and Roy Swaney's out–of–
> court and in-court identifications, the PCRA court can
> have no confidence in Mr. White's convictions requiring
> the PCRA court to grant Mr. White a new trial.  U.S.
> Const. amdts. 5, 6, 8, 15; Pa. Const. art. 1, § 9, 23.

> II.  The PCRA court erred as a matter of law in finding that
> the facts elicited at trial did not warrant a *Kloiber*
> instruction and that Mr. White was not prejudiced by the
> absence of a *Kloiber* instruction.  U.S. Const. amdts. 5, 6,
> 8, 14; Pa. Const. art. §§ 9, 23.

(*Id.*, p. 36.)  The Commonwealth filed a brief on May 3, 2017.  (Doc. 9–1, pp. 338–361.)  By Memorandum dated July 26, 2017, the Pennsylvania Superior Court affirmed the PCRA court's findings and found both of White's claims "waived for lack of development" due to his failure to meaningfully discuss or apply each of the three ineffective assistance prongs to his claims.  (Doc. 1–3, pp. 89–100) (citing *Commonwealth v. Perez*, 103 A.3d 344, 347–48 (Pa. Super. 2014) and *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014)).  The Superior Court also found both claims "would lack merit" even if not waived.  (Doc. 1–3, pp. 94–95, 97–99.)  White did not file a petition for review with the Pennsylvania Supreme Court.

### D.    White's Federal Habeas Proceedings

On September 15, 2017, White filed a timely *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  In his petition, White repeated the two ineffectiveness of counsel claims previously set forth in his counseled second amended PCRA petition.  (*Compare* Doc. 1, p. 8 and Doc. 1–2, pp. 41, 59.)  In accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) and *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), the court issued White

10

formal notice that he could either have the petition ruled on as filed, that is, as a §

2254 petition for writ of habeas corpus and heard as such, while losing his ability

to file a second or successive petition absent certification by the court of appeals,

or withdraw his petition and file one all-inclusive § 2254 petition within the one-

year statutory period prescribed by the Antiterrorism Effective Death Penalty Act

("AEDPA").  (Doc. 4.)  After White failed to notify the court of his election, the

court directed Respondents to file a response to the petition.  On April 30, 2018,

Respondents filed a response to the petition asserting that White's claims were

procedurally defaulted.  (Doc. 9.)  At that point, White's PCRA counsel entered his

appearance and sought an enlargement of time to file an amended petition.  (Docs.

10–11.)

On December 31, 2018, White filed a counseled amended petition

reasserting only his first ineffective assistance of trial counsel claim related to trial

counsel's alleged inadequate investigation of available means to challenge the

eyewitnesses' identification of White as the gunman in the suppression motion,

suppression hearing, and at trial.[4]  (Doc. 17.)  White states this claim was "fairly

presented" to the Superior Court which "adjudicated" the claims on the merits even

though it determined the claim waived.  (*Id*., pp. 29–30.)  Respondents filed a

---

[4]  The court deems White to have abandoned the *Kloiber* claim as it is not addressed in his
amended habeas petition.  (Doc. 17, p. 19.)

response to the amended complaint on November 22, 2019, arguing that the "only claim raised" in White's amended petition was procedurally defaulted without excuse.  Respondents also argued the state courts correctly concluded White was not entitled to relief on his ineffectiveness of counsel claim.  (Doc. 19, pp. 9, 15.) White did not file a traverse.  Accordingly, this matter is ripe for disposition.

### JURISDICTION

A federal district court is authorized to issue habeas corpus relief for individuals incarcerated pursuant to a judgment of a state court only if the prisoner is "in custody in violation of the Constitution or the laws or treaties of the United States."   *See* 28 U.S.C. § 2254(a).  Thus, a habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner in custody pursuant to the judgment of a state court to challenge the "fact or duration" of their confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *see also Velazquez v. Sup't. Fayette SCI*, 937 F.3d 151, 158 (3d Cir. 2019).  Here, jurisdiction is proper as White is presently incarcerated due to his Court of Common Pleas of York County, Pennsylvania, conviction and his counseled amended petition for habeas relief seeks his immediate release from custody.  (Doc. 17.)

### STANDARD OF REVIEW

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d).  Section 2254(d) provides, in relevant part, that exhausted claims adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); *Williams v. Taylor*, 529 U.S. 362, 412–413 (2000).

The phrase "clearly established Federal law" in section 2254(d)(1) restricts the source of clearly established federal law to the Supreme Court's "holdings[ ] as opposed to [ ] dicta … as of the time of the relevant state–court decision." *Williams*, 529 U.S. at 412.  A decision is "contrary to" clearly established law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  Similarly, a decision is an "unreasonable application" of clearly established Supreme Court law when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Id*.  This requires a petitioner to demonstrate that the state court's analysis was "objectively unreasonable, not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 418 (2014) (internal quotations and citation omitted).

Section 2254, as amended by the AEDPA, "imposes a highly deferential standard for evaluating state–court rulings" and "demands that state–court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).  Under the AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *see also Lambert v. Blackwell*, 387 F.3d 210, 239 (3d Cir. 2004).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  A petitioner must establish that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).  "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (internal citations and quotations omitted).

**DISCUSSION**

White raises a single ineffective assistance of counsel claim in his counseled amended habeas petition.  He contends that had trial counsel properly reviewed his case file and adequately investigated scientific eyewitness identification research in existence at the time, there is a reasonable probability that the eyewitnesses' out-of–court and in–court identifications of White would have been suppressed, resulting in a more favorable outcome at trial.  (Doc. 17, pp. 19–20.)  Respondents contend White's sole ineffective assistance of counsel claim is procedurally defaulted without excuse.  (Doc. 19, p. 15.)  Alternatively, Respondents argue the state court's findings were not contrary to or an unreasonable application of federal law or that their decision was based on an unreasonable determination of the facts.  (*Id.*, p. 15.)

### A.    Procedural Default

Habeas corpus relief cannot be granted unless: 1) all available state court remedies on the federal constitutional claims have been exhausted; 2) there is an absence of available state corrective process; or 3) circumstances exist that render such process ineffective to protect the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1)(A).  This statutory provision has been interpreted to require the federal habeas petitioner to present both the facts and legal theory associated with each claim, either on direct appeal or in a state post–conviction proceeding, through

15

"one complete round of the State's established appellate review process."

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844-845 (1999); *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).[5]  For § 2254(d) purposes, a claim has been adjudicated on the merits "when a state court has made a decision that finally resolves the claim on the basis of its substance, rather than on a procedural, or other, ground."  *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 545 (3d Cir. 2014) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)).  However, where a claim has not been exhausted in the state courts, and the time in which to present the claim has expired, the exhaustion requirement is deemed satisfied due to the absence of an available state corrective process.  *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  Federal courts nonetheless deem such claims procedurally defaulted.  *See O'Sullivan*, 526 U.S. at 848; *see also Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).

A second form of procedural default, independent of exhaustion, can occur when a state prisoner fails "to meet the State's procedural requirements for presenting his federal claims [and thus] deprive[s] the state courts of an

---

[5]  In Pennsylvania, pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the County Common Pleas Court and then the Pennsylvania Superior Court either on direct or PCRA appeal, are considered exhausted for the purposes of federal habeas corpus relief under § 2254.  *See In re: Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases*, No. 218, Judicial Administration Docket No. 1 (May 5, 2000) (*per curiam*); *see also Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004).  Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)*; Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004).  Claims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts "when the state court's decision rests upon a state–law ground that is 'independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citing *Coleman*, 501 U.S. at 729.)  This rule applies whether the state law ground is substantive or procedural.  *See Harris v. Reed*, 489 U.S. 255, 261 (1989).  Federal habeas review is foreclosed only "when (1) a state court decline[s] to address claims because the prisoner ha[s] failed to meet a state procedural requirement; and (2) the state judgment rests on independent and adequate state procedural grounds."  *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (internal quotation marks omitted); *see also Bey v. Sup't. Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017).  For a state procedural ruling to constitute an independent and adequate ground precluding review of a federal claim, the last state court rending a judgment in the case must "clearly and expressly" state that its judgment rests on a state procedural bar.  *Harris,* 489 U.S. at 263 (citation and quotation marks omitted).  A state procedural rule is "independent" if it is not "interwoven with the federal law," *Michigan v. Long*, 463 U.S. 1032, 1040 (1983), and it is "adequate" if it is "firmly established and

regularly followed," *Walker v. Martin*, 562 U.S. 307, 315 (2011), at the time of the alleged procedural default.

The procedural default doctrine precludes federal habeas review of a federal claim that a state court has not considered unless petitioner can show either: (1) both "cause and prejudice;" or (2) that a fundamental miscarriage of justice would result if the claim was not reviewed. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Lines*, 208 F.3d at 166; *Wenger v. Frank*, 266 F.3d 218, 225 (3d Cir. 2001). To satisfy the first exception, petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. *Coleman*, 501 U.S. at 750. To establish the "cause" requirement, petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Werts*, 228 F.3d at 192–93 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Once "cause" has been successfully demonstrated, a petitioner must also then prove "prejudice." "Prejudice" must be something that "worked to [petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Alternatively, a federal court may excuse procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. *See Werts,* 228 F.3d 192–93. A credible claim of "actual

18

innocence," constitutes a "miscarriage of justice" that enables courts to hear the merits of otherwise procedurally defaulted habeas claims.  *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004).  The fundamental miscarriage of justice exception, as defined by the United States Supreme Court, is confined to cases of actual innocence as compared to legal innocence, where the petitioner can show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

> **B.      White's Claim is Procedurally Defaulted.**

The Pennsylvania Superior Court found on post–conviction review that because White had "utterly fail[ed] to discuss, or even mention, the three prongs of the ineffectiveness test, and then apply them to his claim," as mandated by *Fears*, 86 A.3d at 804,[6] his ineffective assistance of counsel claim "[wa]s waived and would lack merit."  (*Id.*)  (Doc. 1–3, pp. 94.)  The United States Court of Appeals for the Third Circuit has held reliance on this rule to be an independent and adequate state law ground that precludes federal habeas corpus review.  *See Leake v. Dillman*, 594 F.  App'x 756, 758–59 (3d Cir. 2014) (holding that the Superior Court's reliance on petitioner's failure to develop arguments meaningfully on

---

[6] "[F]ailure to prove any prong of [the ineffective assistance of counsel] test will defeat an ineffectiveness claim."  *Fears*, 86 A.3d at 804.  (Doc. 1–3, p. 93.)

appeal and cite appropriate authorities is an independent and adequate state law ground.)

While White disputes that he waived presentation of this argument,[7] he does not allege this procedural rule was applied by the Superior Court in an arbitrary, unprecedented, or manifestly unfair manner.  Additionally, the court notes that White's appellate post–conviction brief does not cite to *Perez, Fears, or Strickland* or other relevant case law setting forth (or applying) the three prongs of an ineffective assistance of counsel claim.  *See* Doc. 1-3, p. 29–88.  The Superior Court's finding that he "utterly fail[ed] to discuss, or even mention, the three prongs of the ineffectiveness test, and then apply them to his claim" is unrefuted by White's conclusory allegations of proper adherence to the Pennsylvania Supreme Court's requirement set forth in *Fears*.  (Doc. 1–3, p. 94.)

Additionally, even though the *dicta* in the Superior Court opinion addressed White's ineffectiveness claim as to trial counsel's failure to argue "scientific theories to support [his] motion to suppress" and failure "to research all potential

---

[7]  White asserts he did not waive his claim in his PCRA appeal because he "clearly referenced the Federal Constitution, namely the Sixth Amendment, and he repeatedly referenced *Strickland* at the beginning and throughout this federal claim."  (Doc. 17, p. 21.)  This assertion is unsupported by White's PCRA appellate brief.  (Doc. 1–3.)  Further, his argument that based on "the Superior Court's adjudication of Mr. White's claim, the likelihood it knew Mr. White's claim – was a state and federal claim ineffectiveness claim – is substantial, if not absolutely certain."  (Doc. 17, p. 26) (emphasis in original).  There is no question that White argued the factual basis for his ineffectiveness claim before the state courts, however, as the superior court held, he did not present the legal basis of his counsel ineffectiveness claim.  He did not identify or apply the *Strickland* ineffectiveness prongs to his facts anywhere in his appellate brief.

avenues for the suppression of the eyewitnesses' identifications," it was determined that White's "first issue would lack merit, even if not waived." (Doc. 1–3, p. 97.) Based on this language, the court cannot hold that the state court adjudicated White's claims on the merits. (Doc. 1–3, pp. 95–97.) As the Supreme Court held in *Harrington v. Richter*, 562 U.S. 86, 99–100 (2011), "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits *in the absence of any indication or state–law procedural principles to the contrary*." (emphasis added). Here, the Superior Court expressly held that White's claim was "waived" for lack of development and did not rule on the merits of his claim. *See* Doc. 1-3, pp. 94–97. Because the Superior Court's clear and express holding rests on a state procedural bar, the court need not address the superior court's alternative holding. *See Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) (concluding, "if the final state court presented with a federal claim refuses to decide its merits based on an established rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed"). Based on the above, the court finds White's ineffective assistance of counsel claim procedurally defaulted.

## C.   White's Procedural Default is Unexcused

As White's sole claim is procedurally defaulted, the court can only consider the merits of his claim if he establishes either "cause and prejudice" excusing his default, or that a failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  It is White's burden to demonstrate circumstances that would excuse his procedural default.  *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 759.

Here, White has not met this burden because he has not established cause to excuse the default of his claim.  Indeed, White does not even attempt to make a cause and prejudice or actual innocence argument.  (*See* Doc. 17.)  This failure is underscored by White's election not to file a reply brief in this matter to rebut Respondents' argument that "White fails to make any argument for cause and prejudice to excuse any default of his claims."  (Doc. 19, p. 16.)  Accordingly, the court concludes that it is prohibited from reviewing a state court judgement that rests on adequate and independent state law grounds.

**CONCLUSION**

For the foregoing reasons, White's petition for writ of habeas corpus is denied. A certificate of appealability will not issue because reasonable jurists would not find it debatable whether the petition states a valid claim of the denial of a constitutional right and would agree that the court's procedural disposition of the claim to be correct. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate order follows.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Dated:  January 8, 2021          Middle District of Pennsylvania